**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HARRY E. CRISCI**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:07cv1331 |
| ) | **Electronic Filing** |
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Defendant and ) | |
| Third Party Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| **CAROLE L. MCCONNELL** and ) | |
| **H. BRIAN CRISCI**, ) | |
| ) | |
| Third Party Defendants. ) | |

**MEMORANDUM OPINION**

September 21, 2009

**I.    INTRODUCTION**

Plaintiff, Harry E. Crisci ("Harry"), filed this action against the United States of America (the "Government") for the recovery of federal income tax and wage tax assessed or attributed to him.  The Government filed a Third Party Complaint against H. Brian Crisci ("Brian") and Carole L. McConnell ("McConnell")(Collectively with Harry Crisci, the "Taxpayers"), alleging Brian and McConnell should be jointly and severally liable for recovery of a trust fund recovery penalty in the amount of $177,145.23 representing certain income and /or employment taxes. The Third Party Complaint has been stayed by stipulation filed with and approved by this Court. (Documents No. 18 and 19).

The Government has filed a motion for summary judgment seeking the dismissal of Harry's claims, and a finding the penalties assessed against Brian and McConnell are proper. The Taxpayers have responded and the motion is now before the Court.

**II.    STATEMENT OF THE CASE**

Brian was the President of Ideas in Motion-Pennsylvania, Inc. ("IIM"). Harry was the majority shareholder and owner of IIM, and McConnell was the Controller of the company. Pl. CSF ¶¶ 1, 3 and 4. Harry, Brian and McConnell were assessed a penalty of $177,145.23 by the Internal Revenue Service (IRS), pursuant to 26 U.S.C. § 6672, representing withheld income and FICA taxes of the employees of IIM that had not been timely paid to the IRS. Def. SUF ¶¶ 1 and 2. IIM had been assessed for unpaid trust fund taxes withheld from its employees' pay, and non-trust fund taxes that were owed by the corporation as employer. Id. ¶ 3. Unlike general taxes, employee trust fund liability taxes, if unpaid, may be assessed personally against the subject company's officers and/or owners.

On or about November 30, 2004, Harry, Brian and McConnell met with IRS Officers Robert Allingham ("Allingham") and William Evans ("Evans") to discuss the delinquent taxes and tax returns, as well as, solutions to the tax problems. Def. SUF ¶¶ 4 and 5; Pl. CSF ¶¶ 7 and 8. The Taxpayers allege that Allingham and Evans told them that the IRS was mainly concerned with collecting the trust fund taxes, as many corporations file for bankruptcy protection to avoid the non-trust fund taxes. PL. CSF. ¶¶ 9 and 10. The Taxpayers were also told to file all delinquent returns and all future returns when due and to make the required deposits moving forward. Pl. CSF ¶ 16. The Taxpayers were given time to come up with a plan to pay the back taxes. Pl. CSF ¶ 17.

Thereafter, the officers of IIM discussed several options to pay the back taxes, and ultimately decided that the best solution was to sell off the assets of IIM. Pl. CSF ¶¶ 19 and 22. Brian alleges that he had several discussions with Allingham regarding the tax liabilities, all of which were in relation to the trust fund taxes. Pl. CSF. ¶¶ 20 and 21. The Taxpayers contend that the sole purpose of the auction to sell IIM's assets was to pay off the trust fund tax liability and avoid personal liability on IIM's delinquency. PL. CSF ¶ 23. Brian further alleges that he informed Allingham of the decision to sell the corporate assets and their intention to pay off the

trust fund taxes. Pl. CSF ¶ 24. Allingham indicated that the auction was an acceptable solution to the payment of the trust fund taxes, and emphasized the proceeds from the auction had to be paid directly to the IRS. Pl. CSF ¶ 25.

At the time of the auction, the outstanding tax liability of IIM was $404,197.90 of which $171,087.90 represented trust fund taxes. Def. SUF ¶ 32. After the auction, but before the certified check was issued by the auctioneer, the officers of IIM consulted with their attorney who advised them to request that only IIM's name be on the check in order to ensure that the proceeds were applied to trust fund taxes in order to eliminate as much of the personal liability of the officers of IIM as possible. Pl. CSF. ¶¶ 27 and 28. Though the officers were aware and agreed that the proceeds would be handed directly over to the IRS, Brian asked the auctioneer to make the check for the auction proceeds payable to IIM. Pl. CSF. ¶¶ 30 and 32. The net proceeds from the auction totaled $192, 210.31. Def. SUF ¶ 37.

Allingham issued a notice of tax levy to the auctioneer on March 23, 2005, in order to secure the proceeds for the IRS. Def. SUF ¶ 40. On March 24, 2005, Brian gave written instructions to Allingham stating that the auction proceeds were to be applied to the trust fund liabilities. Pl. CSF ¶ 33. Despite Brian's written instructions, the proceeds from the auction were allocated as follows: $31,119.69 to trust fund taxes from the last quarter of 2003, and the remaining $161,090.62 to non-trust fund taxes from 2003. Def. SUF ¶ 42. Harry, Brian and McConnell were then assessed the balance of the trust fund tax liability in the amount of $177, 145.33. Def. SUF ¶ 1.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the

non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.   DISCUSSION

The parties stipulate that the only issue in this case is whether the IRS was estopped from applying the proceeds from the auction to IIM's various tax liabilities at the discretion of the IRS rather than in accordance with the instructions of the Taxpayers. The Taxpayers contend that Allingham and Evans represented that the Government would permit a liquidation of IIM's assets

4

for the express purpose of paying off the trust fund tax of IIM, thus avoiding personal liability, but leaving the non-trust fund taxes unpaid.  The IRS, however, levied on the auction proceeds and applied the involuntary payments, according to IRS procedure, to the non-trust fund tax liability first and then any excess to the trust fund tax liability.

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984).  The burden of proof is on the party claiming estoppel. *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987) (citing *Lyng v. Payne*, 476 U.S. 926, 936 (1986)).  A party attempting to estop another private party must prove: (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment. *Fredericks v. Comm'r*, 126 F.3d 433, 438 (3d Cir. 1997); *United States v. Asmar*, 827 F.2d at 912.  In addition, the majority of circuits recognizing estoppel as an equitable defense against government claims, including the Third Circuit,  impose an additional burden on claimants to establish some affirmative misconduct on the part of the government officials. *United States v. Asmar*, 827 F.2d at 911 n.4, 912; *see also Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996).

The Government argues that the Taxpayer's estoppel claim fails because: (1) there is no evidence representatives of the IRS made statements that were sufficiently definite to constitute an affirmative misrepresentation; (2) their reliance on such vague and indefinite statements was unreasonable; and (3) the Taxpayers suffered no legal detriment.

      A.      <u>Affirmative Misconduct By Government Officials</u>

The Third Circuit has found that not every form of misinformation by the government is sufficient to estop the government, and not all reliance on government statements is reasonable. *Fredericks v. Comm'r*, 126 F.3d at 438.  Affirmative misconduct requires more than a mere omission, negligent failure, or erroneous oral advice from an IRS  agent. *Id.*; *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992).  The Third Circuit has recognized that the authority to act, as well as the failure to do so when such authority exists, can give rise to an

5

estoppel claim. *Fredericks v. Comm'r*, 126 F.3d at 440.  In *Ritter v. United States*, 28 F.2d 265 (3d Cir. 1928), the court stated: "[t]he acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government . . . ." *Id.* at 267.

Considering the facts in the light most favorable to the Taxpayers, and drawing all reasonable inferences therefrom in their favor, there is no reliable evidence in the record that would allow this Court to elevate the vague and ambiguous statements allegedly made by Allingham and/or Evans to affirmative misconduct necessary to work an estoppel against the Government.

The Taxpayers rely on the following as evidence that a material issue of fact exists and to prove affirmative misconduct by the IRS:

(1) At the first meeting with the IRS in November of 2004, Allingham and Evans explained to Harry, Brian and McConnell "what the trust funds were" and that the trust fund taxes were "the responsibility of the officers of the corporation and that many companies actually file bankruptcy to avoid the remaining non-trust fund taxes."  Declaration of H. Brian Crisci ("Brian Decl.") ¶ 7.

(2) Allingham and Evans were mainly concerned about the trust fund taxes. Brian Decl. ¶ 8; Declaration of McConnell ("McConnell Decl.") ¶ 7.  "[T]he government usually forgives the rest. McConnell Decl.  ¶ 7.

(3) Brian had several discussions with the IRS between the initial meeting and the decision to auction IIM's assets during which the following were discussed: (1) IIM was filing and paying taxes in a timely manner; (2) the officer's of IIM were continually looking to pay off taxes and trust fund liabilities; and (3) ultimately IIM was going to auction its assets to pay off the trust fund liability. Brian Deposition p. 36.

(4) After the officers of IIM decided to sell the assets of IIM to pay the trust fund liabilities, Allingham said the auction was "an acceptable way to move forward to pay off theses liabilities, [Allingham] simply emphasized to [Brian] that the auction proceeds had to be paid directly to the IRS." Brian Decl. ¶ 12.

(5) On March 24, 2005, Brian gave Allingham written instructions indicating that the auction proceeds were to be allocated to IIM's trust fund tax liability. Brian Decl. ¶ 18.

(6) Neither Allingham nor Evans ever told the officers of IIM that they intended to levy the auction proceeds and then allocate such proceeds first to the non-trust fund tax liability of IIM.  Brian Decl. ¶ 19.

All the evidence relied upon by the taxpayers consists of the testimony of Brian, Harry or McConnell and what their understanding was regarding the intentions of the IRS.  There is neither written nor oral confirmations from anyone at the IRS regarding its intent to forgive the non-trust fund tax liability or to allocate all the auction proceeds to the trust fund taxes.  To the extent the IRS indicated the non-trust fund tax liability would be forgiven, that would certainly be a misrepresentation[1], but it does not rise to the level of affirmative misconduct[2].

There is no evidence that Allingham or Evans affirmatively represented to anyone at IIM that the best way to satisfy the trust fund tax liability was to auction IIM's assets.  Brian testified that the decision to sell assets was that of the officers of IIM.  *See* Brian Decl. ¶ 12.  The IRS impressed upon Brian that the proceeds of the auction had to be paid directly to the IRS.  At no time did the IRS indicate that the auction proceeds would be turned over to IIM.  Moreover, there is no affirmative representation by the IRS regarding the allocation of the auction proceeds. With regard to IIM's written instructions to Allingham to allocate the proceeds to the trust fund taxes, such instructions were given to Allingham after the IRS had levied on the proceeds and the allocation was then fixed by IRS procedure. *See* Rev. Proc. 2002-26.

Based on the record currently before the Court, the Taxpayers are unable to show any affirmative misconduct on the part of the IRS, nor can the Court find a material issue of fact with regard to such issue.  The Taxpayers' estoppel claim against the Government, therefore, fails as a

---

[1]  IRS agents do not have the authority to forgive tax liabilities. Any forgiveness or compromise of tax liability must be affected in accordance with the provisions of Internal Revenue Code § 7122, 26 U.S.C. § 7122. A forgiveness of tax liability must be in writing and approved by the Secretary of the Treasury or his authorized delegate. *United States v. Asmar*, 827 F.2d at 913 n. 7. Because it is clear that an officer of the IRS has no authority to forgive or compromise a tax liability, a statement that the non-trust fund taxes would be forgiven was a misrepresentation.

[2]  Nor is the Court able to find that the Taxpayers reasonably relied to their detriment on such misrepresentation. In *Heckler*, the Supreme Court specifically stated that the general rule is "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." *Heckler v. Community Health Servs.*, 467 U.S. at 63; *see also Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 385 (1947).

matter of law.

      B      <u>Reasonable and Detrimental Reliance</u>

Reliance is undermined when it is based on oral advice, unconfirmed by a writing. *Heckler v. Community Health Servs.*, 467 U.S. at 65; United States v. *St. John's Gen. Hosp.*, 875 F.2d 1064, 1070 (3d Cir. 1989) (noting that the record was devoid of any reliable evidence to estop the government because the alleged misrepresentation was based on inadmissible hearsay, not written correspondence). Moreover, Courts have held that a private party's reliance on governmental actions or omissions is not reasonable if such acts or omissions are contrary to the law or beyond the agents' authority. The Third Circuit expressly ruled:

> The acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government, if the officers have acted within the scope of their authority.

*Ritter v. United States*, 28 F.2d 265, 267 (3d Cir. 1928). *See also Manloading & Mgmt. Assocs. v. United States*, 461 F.2d 1299, 198 Ct. Cl. 628 (Ct. Cl. 1972); *Walsonavich v. United States*, 335 F.2d 96 (3d Cir. 1964). Courts are more likely to apply estoppel when the government's conduct involves a misrepresentation of fact, rather than a misrepresentation of law. *Fredericks v. Comm'r*, 126 F.3d at 444 (citations omitted). In this instance, where only a misrepresentation outside the authority of an IRS agent may exist, the Court finds any reliance by the Taxpayers upon the vague statements of the intentions of the IRS to be unreasonable.

Finally, to find that the Taxpayers suffered a detriment, the Court must consider whether the conduct attributed to the Government permanently deprived the Taxpayers of a benefit or right to which the Taxpayers were entitled, and in fact, caused the Taxpayers to change their position for the worse. *Fredericks v. Comm'r*, 126 F.3d at 445-446. One of the detriments Taxpayers contend they suffered was the selling of the assets and ceasing the operation of IIM as a going concern. As of the day of the auction, the total liability on the assessed taxes of IIM was over $400,000,00, and such assessment had become a lien on the assets of IIM, depriving the company of any equity in such assets. Therefore, at the time of the alleged representations

regarding allocation of auction proceeds, the Government had a legal right to seize IIM's assets apply the proceeds of the sale of the assets to IIM's non-trust fund tax liability[3]. Therefore, the Taxpayers' reliance on the alleged misrepresentations of Allingham and/or Evans did not deprive them of any legal right to which the Taxpayers were entitled absent the alleged misrepresentation.

V.   CONCLUSION

Based on the foregoing, the Court finds that the Taxpayers' estoppel claim fails as a matter of law, and will grant the motion for summary judgment in favor of the Government. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:   Brian J. Kahle, Esquire
       Jeffrey G. Brooks, Esquire
       Minto Law Group
       Two Gateway Center
       603 Stanwix Street
       Suite 2025
       Pittsburgh, PA 15222

       Brittney N. Campbell, Esquire
       Yonathan Gelblum, Esquire
       Trial Attorney, Tax Division
       U.S. Department of Justice
       Post Office Box 227
       Washington, DC 20044

---

[3]   Further, the Taxpayers admit that had they not auctioned the assets of IIM, the IRS would have levied on such assets and sold them at amounts much less than IIM was able to recoup through its auction. *See* Brian Decl. ¶ 23.